IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANDRE' M. TOFFEL, Trustee for the Bankruptcy Estate of MARVIN L. OLDHAM, II, <br> Plaintiff, <br><br> v. <br><br> CLEAR CHANNEL COMMUNICATIONS, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CASE NO. CV 01-B-2747-S <br> ) <br> ) <br> ) **ENTERED** <br> ) <br> ) JUL 16 200 |

## MEMORANDUM OPINION

Currently before the court is a Motion to Dismiss or, Alternatively, to Stay Action and Compel Arbitration filed by Defendant Clear Channel Communications ("defendant" or "Clear Channel"). Plaintiff Andre' M. Toffel, Trustee for the Bankruptcy Estate of Marvin L. Oldham, II ("plaintiff" or "Oldham"), asserts claims of race-based discrimination against defendant pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981. Defendant filed this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure maintaining that plaintiff's claims are covered by and subject to an arbitration agreement. Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

### I. STATEMENT OF FACTS

Clear Channel owns and operates WENN radio station located in Birmingham, Alabama. (Maisano Aff. ¶ 1; Helton Aff. ¶ 1). Plaintiff alleges that he was hired by Clear Channel as an

on-air talent personality on or about July 16, 1999.[1] (Compl. ¶ 6.) During the first week of September 2000, Karen Helton, who at that time served as Regional Human Resources Director for Clear Channel met with all new employees, including those at WENN, and "notified them of Clear Channel's implementation of an Arbitration Policy in which both Clear Channel and its employees would be obligated to use in order to resolve workplace disputes." (Helton Aff. ¶ 2; Maisano Aff. ¶ 3.) Employees, including plaintiff, were given an employee handbook that included the Arbitration Policy. (Helton, Aff. ¶ 3; Maisano, Aff. ¶ 4; Ex. C.) The handbook contains the Arbitration Policy which states as follows:

> **Arbitration Agreement**
>
> Of course, we hope there will never be employment disputes. But if there is a dispute, we hope to take care of it quickly by discussing and working it out. However, in the unlikely event you have a dispute with Clear Channel that can't be resolved informally, the Company has an Arbitration Policy which will help.
>
> • All covered disputes (most disputes about employment or job termination), will be decided by an impartial arbitrator.
>
> • This arbitrator will follow the Employment Dispute Resolution Rules of the American Arbitration Association, and the decision will be final and binding.
>
> Employees are protected by all relevant employment laws, and the arbitration policy does not change that. By accepting or continuing employment (including raises, promotions, bonuses, etc.) with Clear Channel, all employees agree to this Arbitration policy.
>
> • The Arbitration policy may be changed from time to time

---

[1] In July 1999, plaintiff began his employment at WMJJ and was later transferred to WENN. (Maisano Aff. ¶ 2.) At that time Capstar Broadcasting and AMFM, Inc., owned and operated both WMJJ and WENN. (*Id.*) On August 30, 2000, Clear Channel acquired Capstar Broadcasting and AMFM, Inc., including WENN radio. (*Id.*)

- in minor ways. Clear Channel will at times inform you of these changes.

- When there are any significant changes, you will receive notice by posting, or in a general employee communication, or in some other way.

- If you have not received a full copy of this policy and procedure, or if you need another copy, you may call 888-403-4722 or e-mail us at hr@clearchannel.com. Also, it is on the Company intranet and is accessible to all employees.

(Ex. C.) Helton showed the employees a video that further explained the Arbitration Policy and its procedures. (Helton Aff. ¶ 3.) Helton testified that she "advised the employees that they were being given six (6) weeks to determine if they wanted to remain an employee of Clear Channel under the new policies." (*Id.* ¶ 4.) Helton testified that the employees "were further advised that at the expiration of the six week period, if they remained employed and received a paycheck they would be bound by the terms and conditions contained within the employee guide, including the arbitration policy." (*Id.*)

Attached as Exhibit D to defendant's Memorandum in Support of Defendant's Motion to Dismiss is defendant's Arbitration Agreement ("the Agreement"), which states that "the Company and employees hereby agree that any legal claim or dispute that either may hereafter have against or with the other will be submitted solely to a private, impartial arbitrator (a 'private judge,' so to speak) for a final and binding decision." (Ex. D at 1.) The Agreement further states that "[a]s a condition of employment with the Company, each employee hereby waives his/her right to sue the Company, and the Company hereby waives its right to sue the employee, for **any claim or cause of action covered** by this Agreement." (*Id.* (emphasis added).) Claims covered by the Agreement include any dispute regarding the arbitrability of a potential claim,

3

any dispute regarding the Agreement itself, any claim for violation of any federal law, any claim for discrimination, and any claim for retaliation or discrimination under Title VII. (*See* Ex. D at 2.) The Agreement includes an employee's signature line.[2] (*See* Ex. D at 6.)

Oldham continued to work for Clear Channel until he was terminated on December 6, 2000. (Compl. ¶ 12; Maisano Aff. ¶¶ 5, 6.) Oldham testified that he received an employee handbook from defendant that "contained a page substantially similar to and/or identical to Exhibit C to Defendant's Motion to Dismiss." (Oldham Aff. ¶ 2.) Oldham testified that he "never received any other document from defendant which explained its arbitration agreement." (*Id.* ¶ 3.) Oldham testified that he never read or received a copy of the Agreement. (*Id.*)

## II. DISCUSSION

### A. DEFENDANT'S MOTION TO DISMISS

Defendant moves the court to dismiss, or alternatively, to stay action and compel arbitration pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that plaintiff's claims are covered by and subject to an arbitration agreement. If and to the extent that Rule 12(b)(6) is not the proper vehicle for framing this motion, the court construes the motion as one made pursuant to Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* If a party to a written arbitration agreement is sued in federal court on a claim that the parties have agreed to arbitrate, it is entitled to a stay of judicial proceedings under Section 3 and an order compelling arbitration under Section 4. *See* 9 U.S.C. §§ 3, 4. "If all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it." *Seus v. John*

---

[2] Exhibit D also contains the following language: "[W]e require that new non-union employees sign an agreement promising that all disputes, as defined in this Agreement, will be submitted to final and binding arbitration . . . ." (Ex. D at 1.)

*Nuveen & Co.*, 146 F.3d 175, 197 (3rd Cir. 1998) (citation omitted), *cert. denied*, 525 U.S. 1139 (1999). "The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Because all of plaintiff's claims against defendant must be submitted to arbitration pursuant to an arbitration agreement between plaintiff and defendant, all claims are due to be dismissed.

## B. APPLICABILITY OF THE FAA TO PLAINTIFF'S CLAIMS

Congress enacted the FAA to reverse longstanding judicial hostility toward arbitration agreements and to place them upon the same footing as other contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987). Congress' preeminent goal in passing the FAA "was to enforce private agreements into which parties had entered." *Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The FAA "makes a written agreement to arbitrate 'in any maritime transaction or a contract evidencing a transaction involving commerce . . . valid irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Mitsubishi Motors*, 743 U.S. at 625 (quoting 9 U.S.C. § 2). "The FAA also provides for stays of proceedings in federal district courts when an issue in a proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4." *Gilmer*, 500 U.S. at 25. The Supreme Court has declared that these provisions manifest a "liberal federal policy favoring arbitration agreements." *Id.* (quoting *Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). However, the FAA does not require judicial enforcement of arbitration agreements in all circumstances.

First, the FAA expressly excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" from its coverage. *See* 9 U.S.C. § 1. Because the Supreme Court has held that "Section 1 exempts from the FAA only contracts of employment of transportation workers," *Adams*, 532 U.S. at 119, there is no basis for concluding that the arbitration agreement allegedly reached between Oldham, who is not a transportation worker, and Clear Channel is excluded under Section 1.

Second, compelling arbitration of statutory claims pursuant to the FAA is allowed only in limited circumstances. Generally, "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer*, 500 U.S. at 26 (enforcing compulsory arbitration of an ADEA claim covered by an arbitration agreement). Title VII and other employment-related federal statutory claims that are subject to an arbitration agreement may also be arbitrated. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (holding that Title VII claims are subject to compulsory arbitration pursuant to a valid arbitration agreement); *Wright v. Circuit City Stores, Inc.*, 82 F. Supp. 2d 1279, 1282 (N.D. Ala. 2000) (holding that claims under Title VII and 42 U.S.C. § 1981 are subject to compulsory arbitration pursuant to a written arbitration agreement). However, a party may not be compelled to arbitrate a statutory claim where "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi Motors*, 473 U.S. at 628). Plaintiff does not argue that Congress intended to preclude waiver of judicial remedies for claims under Title VII or 42 U.S.C. § 1981.

The Eleventh Circuit has ruled that an arbitration clause bars litigation of a federal statutory claim when the agreement authorizes the arbitrator to resolve federal statutory claims, the agreement gives the employee the right to insist on arbitration if federal statutory claims are not resolved to his satisfaction in any grievance process, and the employee has individually agreed to the contract containing the arbitration clause. *See Brisentine v. Stone & Webster Eng'g Corp.*, 117 F.3d 519, 526-27 (11th Cir. 1997). It is undisputed that the arbitration agreement authorizes resolution of plaintiff's claims under Title VII and 42 U.S.C. § 1981 by arbitration. By its terms, the agreement covers any claim for violation of any federal law, any claim for discrimination, and any claim for retaliation or discrimination under Title VII. (*See* Ex. D at 2.) It is also undisputed that the arbitration agreement gives Oldham the right to insist on the arbitration of any federal statutory claims against Clear Channel. The Agreement provides that Clear Channel and the employee agree that any legal claim or dispute that either may hereafter have against or with the other will be submitted solely to a private, impartial arbitrator for final and binding decision. (*See* Ex. D at 1.) Under the Agreement, plaintiff may require that virtually any employment-related statutory claim be decided by an impartial arbitrator, who "may grant any remedy or relief, legal or equitable, that would have been available had the claim been asserted in court." (Ex. D at 5.) "[I]f a party is entitled to attorneys' fees under any federal, state or local statute or law, the arbitrator may award those fees pursuant to the governing law, at his/her discretion." (*Id.*) Plaintiff's costs in pursuing arbitration are minimal, because Clear Channel pays the filing fee and arbitrator expenses. (*Id.* at 4.) The agreement gives plaintiff the right to pursue arbitration of any federal statutory claims against defendant in compliance with *Brisentine*'s dictate.

Plaintiff, however, contends that contrary to the requirements articulated in *Brisentine*, he did not agree to the contract containing the arbitration clause. (Pl.'s Opp'n at 3.) *See Brisentine*, 117 F.3d at 526. Plaintiff argues that the alleged arbitration agreement is not enforceable because plaintiff never consented to it.

## C. VALIDITY OF THE ARBITRATION AGREEMENT

"The FAA puts arbitration clauses on even footing with all other clauses in a contract." *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998) (special concurrence of Cox, Circuit Judge, for the majority of the Court).[3] Arbitration clauses "are therefore interpreted according to ordinary state-law rules of contract construction." *Id.* "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Although the contract is silent as to what state's law applies, because Oldham was employed in Birmingham, the court assumes that Alabama law applies. *See Paladino*, 134 F.3d at 1061 n.1.[4] Under Alabama law, the requisite elements of a contract are offer, acceptance, consideration, and mutual assent to the terms essential to the formation of a contract. *Southern Energy Homes, Inc. v. Hennis*, 776 So. 2d 105, 108 (Ala. 2000).

Plaintiff argues that the arbitration agreement is not enforceable against him because "an employee cannot have agreed to something he has never even seen." (Pl.'s Opp'n at 3.) This contention is without merit. First, under Alabama law, an arbitration clause in a contract is

---

[3] Unless noted, subsequent references to this case are to Circuit Judge Cox's opinion.

[4] According to the *Paladino* majority, the state law principles that govern contract formation are "matters of hornbook law." 134 F.3d at 1061 n.1.

8

enforceable against one who has assented to the contract despite the fact that he never saw or received a copy of the contract. *See Southern United Fire Ins. Co. v. Howard*, 775 So. 2d 156 (Ala. 2000) (enforcing an arbitration clause contained in an insurance policy against the insured who testified that he did not remember receiving the policy which actually contained the arbitration clause). Second, undisputed evidence establishes that Helton notified plaintiff of defendant's implementation of an arbitration policy under which both plaintiff and defendant would be obligated to resolve workplace disputes. (Helton Aff. ¶ 2; Masiano Aff. ¶ 3.) Helton provided plaintiff with an employee handbook that included defendant's Arbitration Policy. (Helton Aff. ¶ 3; Maisano Aff. ¶ 4; Ex. C; *see* Oldham Aff. ¶ 2.) Helton showed employees a video, which plaintiff has not denied seeing, that explained the Arbitration Policy and its procedures. (Helton Aff. ¶ 3; *see* Oldham Aff.) The Arbitration Policy itself gave explicit instructions for obtaining a copy of the Arbitration Agreement. (*See* Ex. C.) Helton told the employees that at the expiration of a six-week period, if they remained employed and received a paycheck, they would be bound by the terms and conditions contained in the employee handbook, including the Arbitration Policy. (Helton Aff. ¶ 4.) It is undisputed that although plaintiff had not "seen" a writing memorializing the exact terms of the arbitration agreement offered by defendant, he was aware of its terms.

Second, plaintiff argues the arbitration agreement is unenforceable because he never signed either the Arbitration Policy in the employee handbook or the Arbitration Agreement. (*Id.* at 4.) Plaintiff contends that the Alabama Supreme Court has never enforced an arbitration agreement against a party who has not expressed his assent by signature. (Pl.'s Opp'n at 4.) In support of his position, plaintiff relies on language from *Ex parte Beasley*. In *Beasley* the

9

Alabama Supreme Court concluded that "[a]bsent [the plaintiff's] signature on a document that contains a valid arbitration clause, we cannot hold that she agreed to arbitrate her employment claims against [the defendant]." 712 So. 2d 338, 341 (Ala. 1998). Despite the above-quoted language from *Beasley*, plaintiff's contention is in error.

Alabama case law shows signing a contract is not the only way that one can assent to an agreement. "Alabama's general contract law permits assent to be evidenced by means other than signature, and, thus, the contract of insurance and the arbitration provision contained in it can be enforceable by the parties in the absence of signatures, where the evidence establishes the existence of the agreement." *Howard*, 775 So. 2d 156, 162 (Ala. 2000) (holding that party accepted insurance policy which contained an arbitration provision by paying premiums, renewing the policy, and submitting a claim under the policy). The Alabama Supreme Court "has held that the object of a signature on a contract is to show mutuality and assent, and that mutuality and assent can be manifested in ways other than a signature." *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Kilgore*, 751 So. 2d 8, 11 (Ala. 1999) (citations omitted). "Unless required by a statute to be in writing, a contract does not have to be signed to be enforceable, so long as it is accepted and acted upon." *Id.* "Conduct of one party to a contract from which the other may reasonably draw an inference of consent to an agreement is effective as acceptance." *Id.*

Upon presenting plaintiff with its arbitration policy, defendant informed plaintiff that if he remained employed with defendant and received a paycheck at the expiration of the six-week period after being informed of defendant's arbitration policy, he would be bound by the terms and conditions of the policy. (Helton Aff. ¶ 4.) Plaintiff continued to work for and receive

10

paychecks from defendant for more than six weeks after being informed of the arbitration policy. (Compl. ¶ 12; Maisano Aff. ¶¶ 5, 6.) Because plaintiff performed precisely the conduct that defendant told plaintiff would constitute acceptance of the arbitration policy, defendant can reasonably infer that plaintiff consented to the arbitration policy and plaintiff thereby accepted the policy.[5] *See Howard*, 751 So. 2d at 11.

## CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant's motion to dismiss is due to be granted because plaintiff's claims against defendant must be submitted to arbitration pursuant to an arbitration agreement between plaintiff and defendant.

**DONE** this __6th__ day of July, 2002.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge

---

[5] Plaintiff also relies on *Crown Pontiac, Inc. v. McCarrell*, in which the Alabama Supreme Court stated that "the absence of a signature under the arbitration clause shows a *lack* of mutuality and assent, where the contract contains a signature line specifically for the arbitration clause, but where McCarrell did not sign on that line, although he signed on other lines that similarly indicated agreement to specific terms." 695 So. 2d 615, 618-19 (Ala. 1997). *Crown Pontiac* is not on point. Although the arbitration agreement contains a signature line, (*see* Ex. D at 6), defendant informed plaintiff that he could accept by continuing employment with defendant. Because plaintiff's conduct clearly signifies assent to the arbitration policy, the fact that he did not sign the agreement itself does not show lack of mutuality and assent.